1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SETH JOSEPH CARLSEN,

12              Plaintiff,                    No. CIV S-06-1727 KJM

13        vs.

14   MICHAEL J. ASTRUE,
     Commissioner of Social Security,[1]

15              Defendant.              ORDER

16   _____/

17              Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and

19   Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act

20   ("Act"), respectively.  For the reasons discussed below, the court will deny in part and grant in

21   part plaintiff's motion for summary judgment or remand, and grant in part and deny in part the

22   Commissioner's cross-motion for summary judgment.

23   /////

24   _____

25        [1]  On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social
     Security, replacing Jo Anne B. Barnhart, the original defendant herein.  Pursuant to 42 U.S.C.
26   § 405(g) and Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted as the defendant in this
     action.

                                             1

I.  Factual and Procedural Background

        Plaintiff, born October 2, 1979, applied for DIB and SSI benefits, alleging disability since October 20, 2004, due to irritable bowel syndrome.  Administrative Transcript ("AT") 42, 47.  Plaintiff pursued his claim without counsel, and declined to postpone the January 10, 2005 hearing to obtain counsel.  AT 145-147.  Plaintiff has since retained counsel and is represented in connection with this motion.

        In a decision dated February 15, 2006, the ALJ determined plaintiff was not disabled.[2]  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.  The ALJ found plaintiff's irritable bowel

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

        Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
        Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
        Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
        Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
        Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

    The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1   syndrome is a severe impairment, but determined it does not meet or medically equal a listed

2   impairment.  AT 19.  The ALJ further found that plaintiff's allegations regarding his limitations

3   were not totally credible, that he has the residual functional capacity to perform a full range of

4   medium work, and that plaintiff's impairment does not prevent him from performing past

5   relevant work.  AT 19.

6          Plaintiff contends the ALJ committed error at step two of the sequential

7   evaluation by failing to consider his hypothyroidism.  Plaintiff also contends that the ALJ

8   improperly discredited his testimony, failed to consider his father's lay testimony, improperly

9   discredited the opinion of plaintiff's treating physician, and erred by not obtaining a consultative

10  evaluation to determine plaintiff's residual functional capacity.  Plaintiff also asks the court to

11  consider the additional evidence of a recent residual functional capacity assessment by plaintiff's

12  treating physician.

13  II.  Standard of Review

14         The court reviews the Commissioner's decision to determine whether (1) it is

15  based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

16  record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

17  Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

18  Substantial evidence means more than a mere scintilla of evidence, but less than a

19  preponderance, Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorensen v.

20  Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such evidence as a reasonable

21  mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389,

22  402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59

23  S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler, 782 F.2d

24  1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts

25  from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

26  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

1  supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

2  substantial evidence supports the administrative findings, or if there is conflicting evidence

3  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

4  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

5  improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

6  1335, 1338 (9th Cir. 1988).

7  III.  Analysis

8        A.  Step Two Analysis

9            At step two of the sequential analysis, the ALJ determined plaintiff had a severe

10 impairment of irritable bowel syndrome ("IBS").  Plaintiff now contends the ALJ erred by not

11 addressing plaintiff's hypothyroidism or considering it in combination with plaintiff's IBS.

12           The ALJ did not address plaintiff's hypothyroid condition because plaintiff never

13 alleged that condition as an impairment.  The only impairment alleged by plaintiff was IBS.  AT

14 22, 29, 152.  Because that issue was not before the ALJ at the administrative level, the ALJ

15 committed no error by not addressing it.  Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999)

16 (parties must raise issues at their administrative hearings in order to preserve them on appeal).

17           Furthermore, the burden was on plaintiff to allege his hypothyroidism as an

18 impairment.  Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("The claimant bears the

19 burden of proving that she is disabled.").  Plaintiff did not mention hypothyroidism as an

20 impairment in any of his paperwork or at the hearing.[3]

21           In any event, the evidence shows plaintiff's hypothyroidism was controlled with

22 medication.  AT 89.  A condition that can be controlled or corrected by medication is not

23 disabling.  Warre v. Comm'r of the SSA, 439 F.3d 1001, 1006 (9th Cir. 2006); see also Montijo

24 v. Secretary of HHS, 729 F.2d 599, 600 (9th Cir. 1984) (Addison's Disease controlled with

25

26        [3] When specifically asked at the hearing whether plaintiff had "any other health problems
   that . . . stop [him] from working," plaintiff made no mention of his thyroid condition.  AT 159.

1    medications deemed not disabling); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983) (rib

2    condition controlled with antibiotics not considered disabling).  Based on the foregoing, the ALJ

3    did not err by not addressing plaintiff's hypothyroidism.

4            B.  Consultative Examination and Residual Functional Capacity Assessment

5            Next, plaintiff appears to argue that the ALJ's assessment of plaintiff's residual

6    functional capacity ("RFC") is in error because it is unsupported by a consultative examination.

7    See Pl.'s Mem. P. & A. in Support of Mot. for Summ. J. ("Pl.'s Motion") at 6:5-10.  Plaintiff

8    cites no authority in support of this argument.

9            Indeed, the applicable regulations place the decision to obtain a consultative

10   examination within the Commissioner's discretion.  See 20 C.F.R. § 404.1519a(a)(1) ("The

11   decision to purchase a consultative examination . . . will be made after we have given full

12   consideration to whether . . .additional information [is] needed. . . .").  The regulations require

13   consultative examinations only in certain circumstances, none of which has been suggested by

14   plaintiff or otherwise appears in this case.  See 20 C.F.R. § 404.1519a(b) (requiring such

15   examinations where the additional evidence needed is not contained in the existing records, those

16   records are unobtainable, additional technical medical evidence is needed, there is a change in the

17   claimant's condition, or a conflict in the evidence must be resolved).

18           Accordingly, plaintiff's unsupported contention that the ALJ erred by not

19   obtaining a consultative examination is unavailing.  To the extent plaintiff argues "there is

20   nothing to support the Commissioner's determination of [his] RFC," this argument is unavailing

21   as well.

22           Determination of a claimant's RFC is within the province of the Commissioner,

23   not a claimant's physician.  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001); see 20

24   C.F.R. § 1545(a).  That determination is based on "all the relevant evidence in [the claimant's]

25   case record."  20 C.F.R. § 1545(a)(1).

26   /////

1        Here, the record included evidence that plaintiff's IBS did not even qualify as a

2   severe impairment.  Specifically, two separate SSA disability evaluations, affirmed by agency

3   physicians, concluded that plaintiff's IBS was "non-severe."  AT 78-81.  Plaintiff did not present

4   any evidence that he was unable to lift, carry, sit, stand or walk during a normal workday,

5   although he did allege frequent visits to the restroom and resultant weakness and dizziness.  See,

6   e.g., AT 159.  The record also included a conclusory opinion by plaintiff's treating physician, Dr.

7   Richard E. Behymer, M.D., that plaintiff "cannot function in a normal work environment" and is

8   "completely disabled and unemployable."  AT 90, 140.  The ALJ rejected Dr. Behmyer's opinion

9   as conclusory and advocative.  AT 17; Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992)

10  (ALJ may reject medical opinion where doctors acts as an advocate in claimant's pursuit of

11  benefits).

12       Although the ALJ did not rely on any opinion specifically articulating an

13  assessment of plaintiff's RFC, he found plaintiff retained the capacity to perform a full range of

14  medium work (i.e., lift/carry fifty pounds occasionally and twenty-five pounds frequently, and

15  sit/stand/walk for six hours in an eight-hour workday).  AT 18.  This determination reflects a

16  consideration of the evidence in the record, and resolution of conflicting evidence that plaintiff's

17  IBS was either (1) non-severe or (2) completely disabling.  Sousa v. Callahan, 143 F.3d 1240,

18  1243 (9th Cir. 1998) ("[t]he ALJ is responsible for determining credibility, resolving conflicts in

19  medical testimony, and for resolving ambiguities.") (quoting Andrews v. Shalala, 53 F.3d 1035,

20  1039 (9th Cir. 1995)).

21       C.  Treating Physician's Opinion

22       As discussed above, the ALJ rejected Dr. Behymer's opinion as conclusory and

23  advocative.  Plaintiff alleges the ALJ's failure to adopt this opinion constituted error, and also

24  argues that the Appeals Council failed to address a letter submitted by Dr. Behymer during that

25  stage of the proceedings.

26  /////

1    The record contradicts plaintiff's assertion that the Appeals Council did not

2 consider Dr. Behymer's letters.  Dr. Behymer's May 10, 2006, letter is listed as "additional

3 evidence" considered by the Council on appeal.  See AT 3-7, 140.  That letter references a letter

4 dated December 13, 2005, which was part of the record considered by both the ALJ and the

5 Appeals Council.  AT 89-90.

6    In according little weight to Dr. Behymer's opinion, the ALJ did not err.  The

7 weight given to medical opinions depends in part on whether they are proffered by treating,

8 examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

9 Ordinarily, more weight is given to the opinion of a treating professional, who has a greater

10 opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d

11 1273, 1285 (9th Cir. 1996).   However, "the treating physician's opinion is not . . . necessarily

12 conclusive as to either a physical condition or the ultimate issue of disability."  Magallanes v.

13 Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, slip op.

14 5769, 5774 & n.7 (9th Cir. 1989)).  "The ALJ may disregard the treating physician's opinion

15 whether or not that opinion is contradicted."  Magallanes, 881 F.2d at 751.  "For example, the

16 ALJ need not accept a treating physician's opinion which is 'brief and conclusionary in form

17 with little in the way of clinical findings to support [its] conclusion.'"  Id. (citations omitted).

18 Similarly, the ALJ may reject the opinion of a physician who acts as an advocate in a claimant's

19 pursuit of benefits.  Matney, 981 F.2d at 1020.  "To reject the uncontroverted opinion of a

20 claimant's physician, the ALJ must present clear and convincing reasons for doing so."

21 Magallanes, 881 F.2d at 751.

22    Here, the ALJ found Dr. Behmeyer's opinion that plaintiff is "cannot function in a

23 normal work environment," AT 89-90, to be conclusory and advocative of plaintiff's pursuit of

24 benefits.  AT 17.  The ALJ noted that the treatment relationship between Dr. Behmyer and

25 plaintiff was brief, and that the doctor's conclusions were unsupported by clinical findings.  Id.

26 The record shows plaintiff began seeing Dr. Behymer on October 24, 2005, AT 138-139, and had

7

1  little contact with him thereafter.  Indeed, there are very few records from Dr. Behymer, save for

2  the initial October 2005 treatment note and his letters to the SSA opining that plaintiff is

3  disabled.  AT 89-90, 140.  Even the forms completed by Dr. Behymer and submitted as an

4  exhibit to plaintiff's motion for summary judgment fail to cite any independent clinical bases for

5  the doctor's opinion of plaintiff's "total inability to work."  See Pl.'s Motion, Ex. 1.

6     Indeed, the ALJ found Dr. Behymer's opinion that plaintiff was completely

7  disabled to be inconsistent with clinical findings and treatment records.  In particular, the ALJ

8  noted that laboratory test results from a 2002 sigmoidoscopy were normal.[4]  AT 17, 120.  Test

9  results from a July 2003 colonoscopy also were normal with the exception of internal

10  hemorrhoids.  AT 17, 124.

11     Based on the foregoing, the ALJ accorded little weight to Dr. Behymer's opinion,

12  finding it to be conclusory, advocative, and unsupported by clinical findings and treatment

13  records.  These constitute sufficient reasons supported by substantial evidence in the record.

14    D. Credibility

15     The ALJ determines whether a disability applicant is credible, and the court defers

16  to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g.,

17  Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make

18  an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad

19  v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

20  supported by "a specific, cogent reason for the disbelief").

21     In evaluating whether subjective complaints are credible, the ALJ should first

22  consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan,

23  947 F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an

24

---

25    [4]  A sigmoidoscopy is an inspection of the sigmoid colon [S-shaped part of the colon
which lies in the pelvis] through a sigmoidoscope.  See Dorland's Illustrated Medical Dictionary
26  360, 1520 (27th ed. 1988).

impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ recognized objective evidence showing plaintiff had IBS. However, he noted the results from a colonoscopy and sigmoidoscopy were normal.  AT 17. Further, the ALJ cited plaintiff's daily activities (i.e., church attendance, fellowship meetings, drinking alcohol with friends) as indicative of a condition that was less disabling than plaintiff alleged.  AT 17-18, 154-157.

However, the ALJ also stated that there was evidence plaintiff "had not been entirely compliant in taking prescribed medications," and that he had been "laid off" from his last job, rather than having to quit due his "allegedly disabling impairment."  AT 18.  The ALJ does

1    not cite specific instances in which plaintiff was non-compliant in taking prescribed medications,

2    and the court can find none reflected in the record.   Rather, it appears plaintiff tried numerous

3    medications without much success.  AT 122, 161.  With regard to plaintiff's last job, plaintiff

4    testified his "condition had gotten worse to the point where [he] just couldn't work anymore.

5    The guy that [he] was working for would let [him] work whenever [he] could and what not but it

6    just got to the point where [he] couldn't do that anymore. . . . Technically, [he] just – got laid

7    off."  AT 151.

8            Based on this testimony, the ALJ concluded plaintiff was "laid off" rather than

9    forced to quit due to his "allegedly disabling impairment."  From this, the ALJ inferred that

10   plaintiff's impairment would therefore not prevent the continued performance of that job.

11   AT 18.  This is a mischaracterization of plaintiff's testimony, which indicates he was "laid-off"

12   because his condition prevented him from performing the job.

13           These two skewed reasons for discrediting plaintiff's testimony undermine the

14   ALJ's credibility determination.  However, contrary to plaintiff's assertions, the court is not

15   required to credit plaintiff's testimony as true and remand for an award of benefits.  The case law

16   plaintiff cites provides that remand is inappropriate where "the claimant would be disabled if his

17   testimony were credited" as true.  See Lester, 81 F.3d at 834; Swenson v. Sullivan, 876 F.2d 683,

18   689 (9th Cir. 1989).  Here, it is unclear from the record whether or not plaintiff would be

19   disabled if his testimony were credited.  Rather, the ALJ would likely have to rely on the

20   testimony of a vocational expert to determine if there were jobs plaintiff could do despite his

21   alleged limitations.  Moreover, the Ninth Circuit has expressly held that a case may be remanded

22   for further credibility determinations.  Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003)

23   (holding there is flexibility in applying the "crediting as true" theory, and remanding for further

24   credibility determinations where there were insufficient findings by the ALJ).

25   /////

26   /////

1        Because the ALJ's credibility determination is undermined by the two articulated

2  reasons discussed above, the court will remand for a further determination of plaintiff's

3  credibility.

4      E.  <u>Lay Witness Testimony</u>

5        Plaintiff contends the ALJ erred by completely failing to address the lay testimony

6  of plaintiff's father.  Whether or not the ALJ considered the testimony of plaintiff's father is not

7  entirely clear from the ALJ's decision.  In discrediting plaintiff's allegations, the ALJ

8  simultaneously found "third party statements" "not wholly credible."  AT 18.  The testimony of

9  plaintiff's father is the only "third party [lay] statement" in the record.  Accordingly, it would

10  seem that by discrediting "third party statements" the ALJ intended to discredit the testimony of

11  plaintiff's father.

12        However, an ALJ must consider lay witness testimony concerning a claimant's

13  ability to work.  <u>Stout v. Commissioner SSA</u>, 454 F.3d 1050, 1053 (9th Cir. 2006) (citations

14  omitted).[5]  If the "ALJ wishes to discount the testimony of lay witnesses, he must give reasons

15  that are germane to each witness."  <u>Id.</u> (citing <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir.

16  1993)).

17        Given the ambiguity surrounding the ALJ's treatment of this lay testimony, the

18  court finds the ALJ failed to give sufficiently cogent and germane reasons for discounting that

19  testimony.  Accordingly, on remand, the testimony of plaintiff's father shall be reevaluated

20  pursuant to appropriate legal standards.  <u>Connett</u>, 340 F.3d at 876 (approving remand for further

21  credibility determinations regarding lay testimony).

22  /////

23  /////

24

25       [5] Although defendant argues that Ninth Circuit case law conflicts on whether an ALJ
must consider lay testimony, the court finds the most recent articulation of the law in <u>Stout</u> to be

26  applicable.

F.  Additional Evidence

As noted, plaintiff has submitted with his brief a functional capacity assessment form completed by Dr. Behymer on December 5, 2006.  Plaintiff claims good cause exists for consideration of this evidence because he was unaware such a form existed at the time of the hearing.[6]  The court finds these forms, which post-date the ALJ's decision, are not material.

New evidence is "material," if the court finds a reasonable possibility that considering the evidence would have changed the disability determination.[7]  See Booz v. Secretary of Health and Human Services, 734 F.2d 1378, 1380-81 (9th Cir. 1984).  Unless it is probative of plaintiff's condition at or before the disability hearing, new evidence is not material.  See 42 U.S.C. § 416(i)(2)(G); Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 511-12 (9th Cir. 1987) (holding that new evidence was not material because it related to a medical condition not significantly at issue at time of hearing).[8]

Here, the forms completed by Dr. Behymer are reiterations of his prior conclusory opinions that plaintiff is completely disabled.  For example, in response to the inquiry regarding what medical findings support his assessment that plaintiff can occasionally lift twenty to fifty pounds, Dr. Behymer writes, "physical examination.  Chronic medical condition."  Exhibit 1 to Pl.'s Motion, Ex. 1.  Similarly, he supports his assessment of plaintiff's postural limitations (i.e., occasionally able to climb, balance, stoop, crouch, kneel, and crawl), with "medical findings" of "weakness, fatigue, chronic medical condition."  Id.  He further opines regarding "plaintiff's

---

[6] The court disregards the majority of plaintiff's argument for consideration of new evidence because it concerns, in large part, a "shoulder impingement."  Pl.'s Motion at 10:8-28.  Because there is nothing in the record regarding a shoulder impairment, the court assumes these are arguments inadvertently copied over from a different brief.

[7] Evidence is not deemed immaterial solely by the date it was created.  Later dated evidence may have substantive impact on a preceding period.

[8] When new evidence reflects plaintiff's current condition but is not probative of a condition at the time of the initial determination, the correct procedure is to reapply for benefits.  See Ward v. Schweiker,  686 F.2d 762, 765-66 (9th Cir.1982).

1   totally [*sic*] inability to work." Id.  The ALJ had before him similar, conclusory and unsupported

2   opinions from Dr. Behymer prior to the ALJ's decision.  Accordingly, the court finds it unlikely

3   these new forms would have changed the ALJ's opinion.

4                 Based on the foregoing, IT IS HEREBY ORDERED that:

5                 1.  Plaintiff's motion for summary judgment or remand is denied in part and

6   granted in part;

7                 2.  The Commissioner's cross-motion for summary judgment is denied in part and

8   granted in part; and,

9                 3.  This action is remanded for further proceedings consistent with this order.

10   DATED:  September 30, 2007.

11

12                                              _____

13                                              U.S. MAGISTRATE JUDGE

14

15   mb
     carlsen.ss

16

17

18

19

20

21

22

23

24

25

26